## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

### PITTSBURGH

| | |
|---|---|
| TIMOTHY H., T. H., N. H., I. H.,      ) | |
|         ) | |
|         ) | 2:23-CV-00307-MJH |
|     Plaintiffs,    ) | |
|         ) | |
|     vs.     ) | |
|         ) | |
| MARIA GARCIA, CASEWORKER AT    ) | |
| WESTMORELAND COUNTY    ) | |
| CHILDREN'S BUREAU; DEANNA LNU,    ) | |
| CASEWORKER AT WESTMORELAND | |
| COUNTY CHILDREN'S BUREAU; | |
| NADINE LNU, CASEWORKER AT | |
| WESTMORELAND COUNTY | |
| CHILDREN'S BUREAU; KARYL PIPER, | |
| CASEWORKER AT WESTMORELAND | |
| COUNTY CHILDREN'S BUREAU; AND | |
| DARCY GODICH, CASEWORKER AT | |
| WESTMORELAND COUNTY | |
| CHILDREN'S BUREAU; | |
| | |
|     Defendants, | |

### <u>MEMORANDUM OPINION</u>

On February 24, 2023, Plaintiff, Timothy H., on behalf of himself and his minor children,

T.H., N.H., and I.H., filed a Complaint against Maria Garcia, Deanna LNU, Nadine LNU, Karyl

Piper, and Darcy Godich, alleging constitutional violations under 42 U.S.C. § 1983 for First and

Fourteenth Amendment violations. (ECF No. 1). On March 27, 2024, Defendants filed a Motion

for Summary Judgment, accompanying brief, and Concise Statement of Material Facts. (ECF

Nos. 28-30). On May 24, 2024, Plaintiffs filed a Brief in Opposition to Defendants' Motion for

Summary Judgment and Counter Statement of Material Facts. (ECF Nos. 37 & 37). On June 6,

2024, Defendants filed a Reply to Plaintiffs' Brief in Opposition to Defendants' Motion for

Summary Judgment. (ECF No. 39). Within Plaintiffs' Brief in Opposition, Plaintiffs withdrew all

claims against Nadine Artman and Darcy Godich. (ECF No. 36, at 1). Additionally, Plaintiffs

withdrew all claims within Count III of the Complaint. (*Id.* at 3). These claims are withdrawn.

All remaining issues in this matter have been fully briefed and are ripe for disposition. For the

following reasons, Defendant's Motion for Summary Judgment will be granted.

## I.      Statement of Facts

Plaintiff, Timothy H. ("Father"), is the biological father of minor Plaintiffs, T.H., N.H., and

I.H. (ECF No. 23, at 1). Father shares custody of the three children with their biological mother,

Maria Glaros. (*Id.* at 3). During relevant times, Ms. Glaros was in a relationship with Andrew

Lane. (*Id.*). In June 2021, Father alleges that minor T.H. had a bruise on his arm. (*Id.*). Father

reported the bruise to Maria Garcia, a caseworker for the Westmoreland County Children's

Bureau ("WCCB"). (*Id.*). After investigation, it was determined that the bruise was not a result

of physical abuse. (*Id.*). In September 2021, Father alleges that T.H. had another bruise on his

arm and Father again made a report to Ms. Garcia and the WCCB. (*Id.* at 4). After investigation,

Ms. Garcia and/or the WCCB decided that Father's claims of abuse were unfounded. (*Id.*). In

February 2022, T.H. allegedly informed Father that Mr. Lane had kicked him in the ribs. (*Id.*)

Father took T.H. to UPMC Children's Express Care, where he was examined by Dr. Marissa

Quattrone. (*Id.*). Dr. Quattrone allegedly reported the bruising to Child Protective Services. (*Id.*).

Father made a complaint about the alleged physical abuse to the New Kensington Police

Department. (*Id.*). A third investigation was conducted by the WCCB related to the alleged

kicking of T.H. by Mr. Lane. (*Id.*). After the investigation was completed, WCCB concluded that

T.H. was "pushed" by Mr. Lane's foot and not "kicked." (*Id.*). During a phone call on September

26, 2024, Father informed Karyl Piper, a caseworker at WCCB, that months before, he had made

a complaint against her to the state for her handling of his allegations of physical abuse by Mr.

Lane against his children. (*Id.*); *See also* (ECF No. 30-16). Ms. Piper's supervisor investigated

the complaint made against her. (ECF No. 30, at 5). In a June 12, 2023 email, Ms. Piper's

supervisor concluded that Ms. Piper's conduct did not violate any statute or regulation. (ECF No.

30-8). After Father made his complaint against Ms. Piper, Father made more complaints to

WCCB, alleging that Mr. Lane physically and verbally abused the minor plaintiffs. (ECF No. 30,

at 5). WCCB conducted their fourth investigation into Father's claims of abuse, and the alleged

abuse was determined to be unfounded. (*Id.*). Throughout the course of the various investigations

into Father's complaints of physical abuse, various interviews with minor Plaintiffs and parents

were conducted by WCCB case workers, other children's protective agencies, and police

departments, including a forensic interview with T.H. Defendants Maria Garcia, Deana Roherer,

and Karyl Piper were all involved in one or all of the investigations as caseworkers for WCCB.

## II.    Relevant Legal Standard

According to Federal Rule of Civil Procedure 56, a court must grant summary judgment

where the moving party "shows that there is no genuine dispute as to any material fact" and the

moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a dispute to

be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find

for the non-moving party." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017)

(internal quotations omitted). Additionally, for a factual dispute to be material, it must have an

effect on the outcome of the suit. *Id.* In reviewing and evaluating the evidence to rule upon a

motion for summary judgment, the court must "view the underlying facts and all reasonable

inferences therefrom in the light most favorable to the" non-moving party. *Blunt v. Lower

Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (internal quotations omitted). However,

where "the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,'" the moving party is entitled to judgment as a matter of law. *Moody*, 870 F.3d at 213 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "Discredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion. Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* at 256-57 (internal citation omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). Judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of the party." *Id.* at 251 (internal citation omitted).

### III.    Discussion

### A.  Defendants as State Actors

Defendants argue that Plaintiffs fail to prove that the individually named Defendants are state actors; thus, they cannot be held liable for the § 1983 claims brought against them. (ECF No. 29, 6-8). Plaintiffs argue that the Defendants are liable under § 1983 because they sued Defendants in their official capacities as WCCB caseworkers; and thus, they are state actors. (ECF No. 36, at 3-4). § 1983 provides that a state actor, who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. A plaintiff bringing

a claim under § 1983, therefore, must allege that he was "deprived of a right secured by the

Constitution or laws of the United States, and that the alleged deprivation was committed under

color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). "The

traditional definition of acting under color of state law requires that the defendant in a § 1983

action have exercised power possessed by virtue of state law and made possible only because the

wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988)

(internal quotations and citations omitted).

Plaintiffs' Complaint, alleges that Defendants are caseworkers employed by the WCCB,

"purporting to act within the full scope of [their] authority within their position. (ECF No. 1, at

2). Plaintiffs reiterate in their Brief in Opposition to Defendants' Motion for Summary Judgment,

that they are suing Defendants' in "their official capacity." (ECF No. 36, at 3). It is clear from

the reading of the Complaint that Defendants were being sued in their official capacities as

caseworkers for the WCCB. The WCCB is a county agency, and thus, the Defendants are state

actors for the purposes of § 1983.

**B.  Counts I and II: Fourteenth Amendment Equal Protection Claims**

Father brings Fourteenth Amendment equal protection claims against Defendants on behalf

of himself and the three minor Plaintiffs, arguing that Defendants failed to properly investigate

his alleged claims of child abuse. (ECF No. 1, at 8-11). Defendants argue that Plaintiffs fail to

plead sufficient facts to establish any Fourteenth Amendment equal protection claims against

Defendants, and that Plaintiffs fail to provide any record evidence to support their claims. (ECF

No. 36, at 11-16). Plaintiffs argue that sufficient record evidence exists to set forth a genuine

issue of material fact related to his Fourteenth Amendment equal protection clause claims.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. To establish a claim of equal protection, a plaintiff must demonstrate the existence of purposeful discrimination. *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992). Purposeful discrimination is demonstrated through evidence that a plaintiff has been treated differently because of his membership in a suspect class or that he has been treated differently from other similarly situated individuals. *Id.*; *See also City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985); *Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005). The Supreme Court recognizes "class of one" equal protection clause claims, where a plaintiff claims that they were intentionally treated differently from others similarly situated to the plaintiff, and no rational basis exists for such treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To state a claim under a "class of one" theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

In this case, Plaintiff fails to point to any record evidence to show that a genuine issue of material fact exists that Defendants treated Father or his children differently than others similarly situated. In fact, there is not any record evidence of individuals, similarly situated to Father and/or the minor Plaintiffs, who were treated differently by any Defendants. The record evidence is concentrated only on the sufficiency, or alleged lack thereof, of WCCB's investigations into Father's allegations of physical abuse. There is no record evidence pointing to any sort of comparators. As such, Father has not established any evidence to create a genuine issue of material fact that he and the minor Plaintiffs were treated differently than someone similarly

situated. Accordingly, Defendants' Motion for Summary Judgment, related to Plaintiffs' equal

protection clause claims brought at Counts I and II of the Complaint, will be granted.

### C.  Count IV: First Amendment Claim

Father brings First Amendment retaliation claims against Defendants, alleging that

Defendants determined that his child abuse allegations were unfounded because he made a

complaint about Ms. Piper's conduct. (ECF No. 1, at 14-15).[1] Defendants argue that Father fails

to plead sufficient facts to establish any First Amendment retaliation claim against Defendants,

and that Father fails to provide any record evidence to support such claims. (ECF No. 36, at 11-

16). Father argues that he provides sufficient record evidence to show that a genuine issue of

material fact exists that Defendants failed to properly investigate Father's allegations of child

abuse, because he filed a complaint about Ms. Piper's conduct. (ECF No. 36, at 9-10).

"[T]he First Amendment prohibits government officials from subjecting an individual to

retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547

U.S. 250, 256 (2006) (citation omitted). To establish a First Amendment retaliation claim, a

plaintiff must establish that "(1) he engaged in constitutionally protected conduct; (2) the

defendant engaged in retaliatory action sufficient to deter a person of ordinary firmness from

exercising his constitutional rights; and (3) a causal link existed between the constitutionally

protected conduct and the retaliatory action." *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742,

752 (3d Cir. 2019). To establish the causation element, a plaintiff must "show that his protected

activity was a substantial or motivating factor in the alleged retaliatory action." *See Ambrose v.*

*Township of Robinson, Pa.*, 303 F.3d 488, 493 (3rd Cir. 2002). A plaintiff can meet this burden

---

[1] Count III of the Complaint contains First Amendment retaliation claims made by Father on behalf of the minor
Plaintiffs against Defendants. As discussed above, Plaintiffs have withdrawn such claims.

by showing "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). A plaintiff may also show causation through "evidence gleaned from the record as a whole." *Id.*

Father filed an internal complaint against Ms. Piper with her supervisor at the WCCB. (ECF No. 37, at 10). Father also filed a Complaint against Ms. Piper with Pennsylvania Child Welfare Services. (*Id.*). Father alleges that after he filed said complaints, Ms. Piper and the other named Defendants failed to investigate multiple of Father's reports of physical abuse against T.H. by Mr. Lane. (*Id.*). Father further alleges that Ms. Piper made comments to Father when he communicated his allegations of physical abuse to her, and that she seemed to favor the minor Plaintiffs' mother over Father. (*Id.*). Father argues that Defendants did not investigate his claims of physical abuse, because of retaliation for Father's internal complaint made against Ms. Piper. (*Id.*).

Father does not point to any record evidence to show that a genuine issue of material fact exists to support that Defendants retaliated against him because of the complaint he made against Ms. Piper. First, Father fails to establish that Defendants engaged in any retaliatory action against him that would deter him from exercising his constitutional rights. The record supports that Defendants investigated every complaint of physical abuse reported by Father. Defendants utilized various investigation methods, such as interviews with the minor Plaintiffs and parents, as well as a forensic interview conducted on T.H. In fact, most of the alleged physical abuse and reports occurred before Father made any complaint about Ms. Piper. The early instances of alleged physical abuse occurred in June and September of 2021 and February 2022. (ECF No. 30, at 1). In a September 26, 2022 phone conversation between Ms. Piper and Father, Father

stated he "filed a complaint against [Ms. Piper] months ago with the state." (ECF No. 30-16).

Thus, the complaints made by Father against Ms. Piper were made after many of Father's

complaints about physical abuse had been made. The fact that the results of the investigations did

not result in outcomes favorable to Father, does not mean that any Defendant took retaliatory

action against Father. Second, there is no record evidence to suggest that, if retaliatory action had

been taken by one of the Defendants, that such action was causally connected to Father's

complaint against Ms. Piper. Thus, Father has not established any evidence to create a genuine

issue of material fact that any Defendant retaliated against him because of his complaint about

Ms. Piper. Accordingly, Defendants' Motion for Summary Judgment, related to Father's First

Amendment claim at Count IV of the Complaint, will be granted.

**IV.    Conclusion**

For reasons discussed above, Defendants Motion for Summary Judgment will be granted in

full. Judgment will be entered in favor of Defendants and against Plaintiffs as to all claims and

counts within the Complaint. A separate order to follow.

DATE: 10/21/2024                                    BY THE COURT:

Marilyn J. Horan
United States District Judge